UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHAKAKHAN R. DAVIS                                                            PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:16-CV-674-DPJ-FKB

HINDS COUNTY, MISSISSIPPI, ET AL.                                          DEFENDANTS

ORDER

This pro se civil-rights action is before the Court on the parties' cross-motions. Defendant Hinds County seeks partial dismissal in its Motion for Judgment on the Pleadings [75]. Plaintiff Chakakhan R. Davis responds to that motion with a Motion for a Continuance [77]. She also seeks reconsideration of an order denying an earlier motion for reconsideration [95]. For the reasons that follow, Davis's motions [77, 95] are denied. Hinds County's Motion for Judgment on the Pleadings [75] is granted.

I.    Background

This case arises from Plaintiff Chakakhan R. Davis's arrest and subsequent detention at the Hinds County Detention Center. Davis's factual allegations are reflected in her Amended Complaint [61] and were summarized in at least two orders. *See* Nov. 29, 2017 Order [58]; May 23, 2017 Order [28]. The Court writes today for the record and the parties, so it will not repeat the factual summaries.

That said, the procedural history affects the pending motions and is somewhat convoluted. The relevant history begins with the Court's May 23, 2017 Order [28] granting partial dismissal under Rule 12(c). That Order addressed motions filed by Hinds County and two individual defendants. In broad terms, the Order dismissed the state and federal claims against the individual defendants in their individual capacities without prejudice under Rule 12(b)(5)

because Davis failed to properly serve those defendants. As to Hinds County, the Court dismissed the state-law claims related to the events at the detention center with prejudice. As to the arrest-related state-law claims against the County, the Court dismissed the false-arrest claim without prejudice to potential amendment; dismissed the malicious-prosecution claim with prejudice; and denied the motion to dismiss as to excessive force, false imprisonment, and abuse of process.

Although the Court largely granted Defendants' motions, it also ruled that Davis could file a motion to amend her claims in three ways: (1) she could attempt to amend the pleading to state claims against all three defendants under the First Amendment; (2) she could attempt to plead a state-law false-arrest claim against the County; and (3) she could attempt to state a claim against Defendant Tyrone Lewis related to hiring/supervision issues.

Davis filed her motion for leave to amend [30] on June 2, 2017, and on November 29, 2017, the Court granted her motion, in part, allowing her to assert claims against Defendant Lewis (individually) for failure to train or supervise. Nov. 29, 2017 Order [58] at 9. In the end, the following claims survived: (1) failure to train/supervise against Lewis; (2) the federal claims against Hinds County; and (3) the state-law claims against the County for excessive force, false imprisonment, and abuse of process. *See id.* Aggrieved by that ruling, Davis filed her first motion for reconsideration [63] on December 13, 2017. The Court denied the motion on February 23, 2018. *See* Feb. 23, 2018 Order [93].

All of that leads to the motions now up for consideration. First, Davis seeks reconsideration of the February 23, 2018 Order denying reconsideration of her motion seeking leave to amend. *See* Pl.'s Mot. [95]. Second, Hinds County seeks *partial* dismissal under Rule 12(c) of Plaintiff's Fourth and Fourteenth Amendment claims for false arrest, illegal search,

2

excessive force, and false imprisonment, along with Davis's Eighth Amendment claim for cruel and unusual punishment. *See* Def.'s Mot. [75] at 10. Hinds County also seeks dismissal of the state-law claim for false imprisonment related to the events at the detention center. Def.'s Mot. [75] at 9. Finally, Davis asks the Court to convert Defendants' motion under Rule 12(d) and then allow discovery under Rule 56(d). *See* Pl.'s Mot. [77]. Nevertheless, her motion and her subsequent Reply [89] address the substance of the County's Rule 12(c) motion and will be construed as a response.[1]

II.     Motion for Continuance [77]

Starting with the motion for continuance, Davis invokes Rule 12(d), which states that "if, on a motion under . . . Rule 12(c), maters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56." Whether to convert a motion is a matter left to the district court's "complete discretion." *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n.3 (5th Cir. 1988) (citation omitted).

Davis says the Court should exercise that discretion because Hinds County alternatively sought summary judgment. Pl.'s Mot. [77] at 1. But Hinds County did no such thing. *See generally* Def.'s Mot. [75]; Def.'s Mem. [76]. The County premised its motion on Davis's Amended Complaint and the exhibits thereto, without looking beyond the pleadings. The Court will do the same.

"Finally, a request for discovery is generally not an appropriate response to a Rule 12[(c)] motion." *Minor v. Jackson Mun. Airport Auth.*, No. 3:15-CV-936-DPJ-FKB, 2016 WL 4869696, at *5 (S.D. Miss. Sept. 13, 2016) (citing *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 263

---

[1] The Court notes that Plaintiff's Motion/Memorandum [77] and Reply [89] cover 41 pages, whereas Uniform Local Rule 7(b)(5) limits parties to 35 pages. Davis is instructed to adhere to this rule going forward.

3

(5th Cir. 2008) (rejecting plea for discovery and holding that "when deciding, under Rule 12(b)(6), whether to dismiss . . . the court considers, of course, only the allegations in the complaint")). Davis's motion to continue is denied.

III.     Motion for Judgment on the Pleadings

   A.     Standard

Under Rule 12(c), the Court applies "the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Accordingly, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To overcome a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at

4

679 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Finally, Davis is proceeding pro se. "It is well-established that 'pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.'" *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (quoting *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981)). "However, regardless of whether the plaintiff is proceeding pro se or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice.'" *Id.* (quoting *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

B. Analysis

1. Fourth Amendment Claims

Davis pursues Fourth Amendment claims for false-arrest and excessive force related to her arrest. Hinds County says these claims should be dismissed because Davis failed to assert (1) a plausible claim that the officers violated her constitutional rights, and (2) a plausible basis for municipal liability. *See* Def.'s Mem. [76] at 6–7.[2]

The pleaded facts offer a slim basis for finding plausible constitutional violations for false arrest or excessive force during the arrest. But even assuming those constitutional violations occurred, Davis must somehow link them to Hinds County. "A municipality is almost

---

[2] To the extent Davis asserts any of her arrest-related claims under the Fourteenth Amendment, they are dismissed and will be liberally construed as arising under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that "excessive force claim arising in the context of an arrest" is "most properly characterized as one invoking the protections of the Fourth Amendment").

5

never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). In most cases, municipal liability requires proof of a municipal policy, promulgated by a municipal policymaker, that is the "moving force" behind a constitutional violation. *Id.*

Davis concedes in reply that she has not pleaded "a formal policy that caused [her] to suffer" a constitutional injury and further states that she has not pleaded a "widespread practice." Pl.'s Reply [89] at 5. Instead, she pursues these claims by arguing inadequate training and supervision. *See id.* Inadequate training or supervision—when shown—can subject a municipality to liability for its employee's unconstitutional acts, but it is a tall order.

To prevail on a failure-to-train or supervise claim against a municipality, a plaintiff must show "that (1) the . . . procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly caused the plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 385–87 (1989); *Benavides v. Cty. of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992)).

As to the second prong, courts employ the "'deliberate indifference' standard that applies to supervisor liability." *Id.* (quoting *Benavides*, 955 F.2d at 972). That standard is "extremely high." *Sanchez v. Young Cty.*, 866 F.3d 274, 280 (5th Cir. 2017) (citation omitted). "To demonstrate deliberate indifference, a plaintiff must show that public officers were aware of facts from which an inference of a substantial risk of serious harm to an individual could be drawn; that they actually drew the inference; and that their response indicates subjective intention that the harm occur." *Id.* This normally requires "[p]roof of more than a single instance of the lack of training or supervision *causing* a violation of constitutional rights." *Thompson v. Upshur Cty.*,

245 F.3d 447, 459 (5th Cir. 2001) (emphasis added). Instead, "at least a pattern of similar violations" is generally required, and "the inadequacy of training must be obvious and obviously likely to result in a constitutional violation." *Id.*

Davis fails to plead facts that would suggest plausible failure-to-train or supervise claims. To begin, she offers nothing beyond conclusory and speculative statements that a failure to train or supervise actually occurred. *See, e.g.*, Pl.'s Am. Compl. [61] at 5 (averring that Defendants were "reckless and/or careless [in their] training, supervision and discipline"). The Court must ignore such averments. *Iqbal*, 556 U.S. at 678. The remaining assertions never say how the training or supervision was inadequate or how it caused her arrest-related claims. Moreover, she focuses primarily on the facts of her own arrest and—as she concedes—has not pleaded a pattern training/supervision related violations. *See* Pl.'s Reply [89] at 5.

Finally, Davis has not shown deliberate indifference. The closest Davis comes to asserting facts that might support a deliberate-indifference claim is her reference to a Department of Justice ("DOJ") report she attached to her Amended Complaint. *See* DOJ Report [61-3]; *see also* Pl.'s Mot. [77] at 4; Pl.'s Reply [89] at 6. But that report dealt with conditions at the detention center. It made no reference to arrests—much less training and supervision issues related to arrests.

A similar thing happened in *Jordan v. Brumfield*, where the Fifth Circuit found that another DOJ report was irrelevant:

> Nor did the court err in declining to take judicial notice of similar violations by the NOPD. Jordan relies on the Department of Justice's 2011 report ("DOJ report") of abuses within the NOPD as the primary source from which the court should have taken judicial notice. The DOJ's report does mention that New Orleans Police Officers "too frequently . . . conduct illegal . . . arrests with impunity." However, Jordan does not claim that the report contains similar allegations to the one at issue in his case—that officers are applying for arrest warrants without probable cause.

7

687 F. App'x 408, 416 (5th Cir. 2017). The DOJ report regarding Hinds County fails for the same reason—it focused on conditions at the detention center and did not mention arrest-related issues.

Accordingly, Davis has not pleaded a plausible claim for municipal liability under § 1983 related to her arrest. The Court grants this portion of Hinds County's motion. Davis's Fourth Amendment false-arrest and excessive-force claims are dismissed as to Hinds County with prejudice.[3]

### 2. Unlawful Search

Davis insists that she is pursuing an unlawful-search claim, though it is poorly defined in the Amended Complaint or her current briefs. She does state in her Amended Complaint that officers strip-searched her in the presence of a male guard. *See* Pl.'s Am. Compl. [61] at 4. To the extent her claim is based on that allegation, Hinds County seeks dismissal.

The Fifth Circuit has been explicit on this issue, holding "that strip searches carried out in nonsecluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional." *Tasby v. Lynaugh*, 123 F. App'x 614, 615 (5th Cir. 2005) (citation omitted). In light of this precedent, the Court grants Hinds County's motion. Davis's unlawful-search claim is dismissed without prejudice.

---

[3] The first time the Court granted Defendants relief under Rule 12(c), it allowed Davis to seek leave to amend. But the Court now concludes that it is time to move the case forward on Davis's surviving claims. This suit was filed in August *2016* yet is still in the initial pleading stages. Davis has expressed her views on what she says happened in both the original and amended complaints—as well as numerous motions and other briefs—but has never shown an ability to state plausible claims on the issues now before the Court. Finally, the deadline to amend passed July 27, 2017. *See* Scheduling Order [39] at 4.

3. Excessive Force at Detention Center

Davis brings a Fourteenth Amendment claim for excessive force while at the detention center based on a number of alleged acts. It appears that Hinds County has limited its motion as to this federal claim to the allegation that a detention-center officer dug her fingernails into Davis's arm. *See* Def.'s Mem. [76] at 10 n.3. The County correctly observes that the Court disallowed Davis's Fourteenth Amendment excessive-force claim against Officer Brenda Jones based on the *de minimis* nature of this injury. *See* May 23, 2017 Order [28] at 14 ("Davis's sole contention in her Complaint is that Jones 'dragged' her to a cell, digging her nails into her arm. She alleges no actual injury as a result, and there is nothing suggesting that the force was unreasonably excessive."). Based on that earlier holding, Hinds County's motion is granted only as to this incident. The excessive-force claim related to the detention center will otherwise move forward.

4. False Imprisonment

Hinds County seeks dismissal of Davis's state-law false-imprisonment claim related to her "detention at Hinds County Detention Center" because it is "barred by Miss. Code Ann. §11-45-9(1)(m) of the Mississippi Tort Claims Act (MTCA)." Def.'s Mem. [76] at 13. The Court considered this argument when the County first sought dismissal, holding that "the state-law claims related to the events at the detention center are due to be dismissed—with prejudice—as to Hinds County." May 23, 2017 Order [28] at 17. This issue has already been decided.

5. Eighth Amendment

Davis asserts claims under the Eighth Amendment, but the Eighth Amendment is inapplicable because she was a pretrial detainee. Accordingly, Hinds County's motion is granted

to the extent Davis asserts claims under that amendment. *See Hare v. Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (holding that Eighth Amendment has no application to pretrial detainees).[4]

IV.     Motion to Reconsider

Davis asks the Court to reconsider its Order [93] refusing to reconsider its earlier Order [58] denying in part her Motion to Amend. *See* Pl.'s Mot. [95]. The Court again denies the request.

The Order Davis asks the Court to review is interlocutory; therefore, Federal Rule of Civil Procedure 54(b) governs. *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017). "'Interlocutory orders,' such as grants of partial [dismissal] . . . are left within the plenary power of the court that rendered them to afford such relief from them as justice requires." *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)). Whether to grant such relief is a matter left to the trial court's discretion. *See id.*

Davis's current motion revisits an issue the Court has twice considered. As the Fifth Circuit has noted, a "busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir. 2003) (quoting *Freeman v. Cont'l Gin Co.*, 381 F.2d 459, 469 (5th Cir. 1967)). Davis has had multiple

---

[4] Davis mentions in her motion that she has an Eighth Amendment medical-care claim. Pl.'s Mot. [77] at 6. She could pursue such a claim under the Fourteenth Amendment, but she has neither sought nor received leave to again amend her complaint to assert a medical-care claim. And the facts she did aver in her Amended Complaint do not suggest a plausible claim. Regardless, the claim is not before the Court.

opportunities to advance her First Amendment retaliation claim and has failed to plead non-conclusory facts to support it. The motion for reconsideration is again denied.[5]

IV. Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed do not change the outcome. Hinds County's Motion for Judgment on the Pleadings [75] is granted. The Court denies Davis's continuance motion [77] and reconsideration motion [95].

**SO ORDERED AND ADJUDGED** this the 30th day of April, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] Since requesting leave to amend her Complaint, Davis has discussed her First Amendment retaliation claim at least four times with the Court. *See* Pl.'s Mot. [30]; Pl.'s Mot. [63]; Pl.'s Mot. [77]; Pl.'s Reply [89]; and Pl.'s Mot. [95]. But, for the first time here, Davis vaguely alleges that a conspiracy existed between Officer Brenda Jones and others to spray Davis in the face with mace because of her previous complaints about the department, *see* Pl.'s Reply [89] at 34, and that Davis "engaged in a verbal confrontation with the Defendants Deputy (ies) and prison officials involving matters of public concern on the date in question," Pl.'s Mot. [95] at 27. These assertions are too late and too speculative to state a plausible claim.