IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CHAKAKHAN R. DAVIS                                                              PLAINTIFF

vs.                                                      CIVIL ACTION NO. 3:16-cv-674-DPJ-FKB

HINDS COUNTY, MISSISSIPPI                                                       DEFENDANT

## ORDER

This case is before the Court on two motions for sanctions, [92] and [154], filed by Plaintiff Chakakhan R. Davis. Proceeding *pro se*, Davis asserts various claims under federal and state law against Hinds County, Mississippi. Her claims relate to her May 26, 2015, arrest and subsequent detention at the Hinds County Detention Facility. Davis requests that the Court impose sanctions on Hinds County relating to certain discovery responses and the delayed production of body-worn camera ("BWC") footage of her arrest.

## I. Factual Background

Davis filed suit in the Circuit Court of Hinds County, Mississippi on August 2, 2016. Hinds County, along with other since-dismissed defendants, removed the case to this Court on August 29, 2016. On October 27, 2016, the Court stayed discovery in the case pending resolution of several immunity-based motions to dismiss. The Court lifted the stay on May 23, 2017, and held a telephonic case management conference on June 27, 2017.

On July 20, 2017, Davis propounded her first set of interrogatories and requests for production of documents to Hinds County. [40]; [41]. Davis asked Hinds County to identify any BWC footage of her arrest and detention and to produce the same. [90-1] at 14; [92] at 8. In an interrogatory response propounded on September 26, 2017, Hinds County stated, "[t]here were no body cameras worn by any of the County officers on May 26, 2015, or during the course of

1

Plaintiff's May 2015 incarceration." [90-1] at 14. In response to a request for production, Hinds County stated, "Defendant would affirmatively aver that the officers did not wear 'body cam recorder[s]' and as such, no such recordings exist. Defendant does not have in its possession any other video or audio recording pertaining to Plaintiff." [92] at 8.

After receiving Hinds County's discovery responses, Davis continued to seek information regarding the existence of BWC footage of her arrest and detention. On December 21, 2017, she propounded a second set of interrogatories and requests for production. [69]; [70]. Davis requested that Hinds County identify any written policies it had with regard to BWCs and the date that those policies went into effect. [90-2] at 1. In response, on February 8, 2018, Hinds County produced a a copy of the Hinds County Sheriff's Department ("HCSD") policy on BWCs. [92-2]. That policy went into effect on May 1, 2015, twenty-five days before Davis's arrest. *Id.* The policy required, *inter alia*, that officers assigned cameras "activate the BWC to record all law enforcement related contacts with citizens in the performance of official duties." *Id.* at 2.

On February 20, 2018, Davis filed her first motion for sanctions [92]. Davis contended that Hinds County improperly destroyed, or failed to preserve, BWC footage of her arrest. In support of this allegation, Davis attached as an exhibit an audio CD containing recordings from her cell phone of the arrest. [92-1]. One of the audio recordings includes her interaction with an HCSD deputy in the minutes prior to her arrest. *Id.* at Track 2, time stamp 1:20. In the recording, the deputy tells Davis, "I got it right here, right here. You trying to record everything? You don't need it, I got it right here. See what I'm saying? I'm recording." *Id.*

Based on the HCSD policy and her cell phone recording, Davis asserted that her arrest must have been recorded using a BWC. Davis contended that despite Hinds County's discovery

responses to the contrary, BWC footage of her arrest must have existed at some point, but Hinds County had failed to preserve or produce it. She requested sanctions under Fed. R. Civ. P. 37(e).

On March 14, 2018, Hinds County filed its response to Davis's motion for sanctions. In its response, Hinds County shifted its position on whether the two deputies at the scene, Bobby Nichols and Corey Carr, had been wearing BWCs at the time of the arrest. Specifically, Hinds County essentially admitted that they had been wearing cameras at the time, but denied that any footage of the arrest existed.

In support of its response, Hinds County filed an affidavit from HCSD IT Officer Warren Finch. In his affidavit, Officer Finch testified that "[i]n May 2015, at the time of [Davis's arrest] . . . , patrol deputies were assigned body cameras which were worn by the officers." [104-3] at 1. However, Finch testified that he had conducted a search of Deputy Nichols's and Deputy Carr's cameras and their respective folders on the HCSD server, and he found no footage of Davis's May 26, 2015, arrest. *Id.* at 2. Further, Finch explained that he was the only employee with the ability to delete BWC footage and that he had not deleted footage from these officers' folders. *Id.* He testified, "[t]o my knowledge no one has deleted any footage created by and/or uploaded by Deputies Nichols or Carr . . . ." *Id.*

The Court considered Davis's motion, Hinds County's response, and Davis's rebuttal. Because the Court could not reconcile Finch's affidavit with Davis's recording of the deputy telling her that he was filming the arrest, the Court deferred ruling on the motion and set the matter for hearing. [145] at 6. The Court scheduled the hearing for July 17, 2018, and required that Hinds County secure the presence of Deputies Nichols, Carr, and Finch. *Id.*

On July 9, 2018, defense counsel served supplemental discovery responses stating that Hinds County had recovered video files of Davis's arrest, which had been recorded by Deputy

Carr's BWC, and was producing them. [152], [154] at 3-4. On July 10, 2018, defense counsel sent an email to the undersigned's chambers explaining that "[t]he County's IT Officer was able to recover two video files created by Deputy Carr from the scene of Plaintiff's May 26, 2015, arrest." Counsel stated that Hinds County had supplemented its discovery responses and provided Davis with a disc containing the files.

On July 13, 2018, Davis filed a second motion for sanctions against Hinds County [154]. Davis argued that Hinds County "willfully provided discovery answers or responses known to be false." [154] at 9. She moved for sanctions pursuant to Fed. R. Civ. P. 11 and 37.

On July 17, 2018, the Court held its hearing. Davis failed to attend despite having received notice, and the Court held the hearing in her absence.[1] Defendants made available two of the three witnesses addressed in the June 28, 2018, Order: Deputy Nichols and IT Officer Finch.[2]

Although the hearing had originally been set to determine the appropriateness of sanctions under Fed. R. Civ. P. 37(e), the production of the BWC footage of Davis's arrest changed the focus of the hearing. Instead, the hearing focused on whether Hinds County and/or its counsel should be sanctioned for Hinds County's incorrect discovery responses from September 2017, inaccurate response to Davis's motion and supporting Finch affidavit, and failure to recover and produce the BWC footage sooner.

---

[1] The July 17, 2018, hearing date and time was set by the Court in Order [145]. The Court mailed a copy of the Order to Davis on June 28, 2018 (as noted by a non-public staff note in the CM/ECF docketing system). Additionally, Davis has signed up to receive electronic notification of, and access to, docket entries in this case. The CM/ECF system reflects that she received a copy of the Order by email at 9:21 AM CDT on June 28, 2018. Moreover, Plaintiff has sent numerous emails to the Court during the course of this litigation from that email address. In fact, she sent an email to the undersigned's chambers on the morning of July 17, 2018, informing the Court that she would not be attending the hearing due to pending motions to recuse [143] and [146], as well as transportation issues. The Court read a summary of that email into the record at the start of the July 17 hearing.

[2] In an affidavit filed prior to the hearing, defense counsel informed the Court that former Deputy Carr is now employed with the United States Department of Homeland Security/Immigration and Customs Enforcement, and is presently located in New Mexico. [151]. For these reasons, and because Defendants made the other two witnesses available, the Court excused his absence during the hearing.

Deputies Nichols and Finch both testified at the hearing. Defense counsel also provided explanations and answered questions from the Court regarding Hinds County's discovery responses, Finch's affidavit, and defense counsel's efforts to comply with discovery obligations. After considering the deputies' testimony and the attorneys' explanations, the Court finds that the relevant facts are as follows:

>A different administration now heads the HCSD than in 2015. In preparing discovery responses, defense counsel contacted the former sheriff, Tyrone Lewis, who led the HCSD on May 26, 2015, and asked about the department's use of BWCs at that time. Former-Sheriff Lewis advised counsel that the HCSD did not use BWCs at the time of Davis's arrest. Based on that information, defense counsel prepared the factually incorrect discovery responses, which the current Sheriff, Victor Mason, signed, and Hinds County propounded those discovery responses to Davis on September 26, 2017.

>After receiving Davis's first motion for sanctions [92], defense counsel further investigated whether the HCSD deputies could have been wearing or using BWCs during Davis's arrest on May 26, 2015. Defense counsel's investigation led them to Deputy Finch, who explained that the HCSD had in fact maintained a short-lived BWC program that began in May 2015 and ended before the end of that year. Finch advised that the HCSD had issued each officer in the program a camera with a memory card. The officer would upload video from the camera's memory card to their own folder on an HCSD server. The file would remain in the officer's folder unless a supervisor wanted the file preserved and moved it into their own folder.

Finch advised defense counsel that no officer or supervisor had the ability to delete any BWC videos and that only he had the ability to delete any such videos.

Finch also told defense counsel that in order to conserve space on the computer server, the department originally intended to delete BWC videos after sixty days, unless a supervisor moved the video to the supervisor's folder. Finch advised defense counsel that in order to implement the sixty-day deletion policy, the IT department developed a computer script to delete automatically files from the deputies' folders after sixty days, while leaving the BWC videos in the supervisor's folders. But Finch further told defense counsel that the IT department never activated the script to run automatically. Since the script had never been activated to delete files automatically, defense counsel erroneously assumed that no BWC video files had ever been deleted.

As to whether Nichols or Carr had worn BWCs at the time of Davis's arrest, Finch told defense counsel that the HCSD had issued Nichols and Carr BWCs on May 13, 2015. At defense counsel's request, Finch performed a search of the folders belonging to Nichols, Carr, and their supervisors, but did not find any video of Davis's arrest. Based on that information, defense counsel prepared Finch's affidavit, he signed it, and Hinds County submitted it in support of its response to Davis's first motion for sanctions. *See* [104-3].

Eventually, defense counsel conferred with Deputy Nichols, who is sixty-two years old and retired. Nichols confirmed to defense counsel that it was his voice on Davis's audio recording of her arrest. He admitted that during his encounter with Davis on May 26, 2015, he had told Davis that he was filming her with his BWC,

even though he never activated his camera.[3] Nichols explained that at that time, he had only recently been issued the BWC and was unfamiliar with how to use it. However, he stated that while he did not record any footage, Deputy Carr had recorded their interaction with Davis and her arrest on May 26, 2015.

Continuing to investigate the BWC issue, defense counsel again conferred with Deputy Finch. In a conversation with defense counsel after his affidavit, Finch told defense counsel for the first time that he had tested the computer script on two occasions in approximately July and August of 2015. Therefore, even though the IT department had never set the computer script to delete files automatically, any BWC footage of Davis's arrest would have been deleted when he had tested the computer script.

After receiving this new information, defense counsel asked Finch if there was any way to find and recover deleted BWC video. Finch told them that it would take specialized software and that it would not normally be possible. Nevertheless, Finch acquired specialized software, and through the use of the specialized software, Finch was able, on Saturday, July 7, 2018, to locate and recover two videos taken by Deputy Carr's BWC of Davis's encounter with the officers and arrest. Defense counsel supplemented Hinds County's discovery responses on Monday, July 9, 2018, and mailed a copy of the video to Davis.

---

[3] At the hearing, Deputy Nichols testified that he told Davis that he was recording her on his BWC in an attempt to calm her down. He explained that he believed that Davis would be less likely to do something wrong if she thought he was recording her.

## II. Analysis

Davis's first motion for sanctions [92] was filed pursuant to Fed. R. Civ. P. 37(e), which provides for sanctions in the event a party fails to preserve electronically stored information such that it "cannot be restored." The uncontested testimony in this matter is that the only officer who actually recorded video of Davis's arrest was Deputy Carr, and that video was ultimately retrieved and produced by Defendant. Thus, sanctions are not warranted under Rule 37(e). Davis's first motion for sanctions [92] is, therefore, denied.

Davis filed her second motion for sanctions [154] after Hinds County produced Deputy Carr's BWC footage. She moved for sanctions pursuant to Fed. R. Civ. P. 11, which makes misrepresentations to the Court sanctionable, and pursuant to Rule 37(c), which provides for sanctions if a party fails to supplement an earlier discovery response. Additionally, Plaintiff's motions raise the possibility of sanctions pursuant to the Court's inherent authority to sanction a party for certain conduct amounting to bad faith during the course of litigation. *See In re Yorkshire, LLC*, 540 F.3d 328, 332 (5th Cir. 2008).

The approximately ten-month delay between Hinds County's initial discovery responses, in which it denied that the deputies even wore BWCs, and its supplementation of those responses and production of the BWC video raises the possibility of sanctions under Rule 37(c). However, Rule 37(c) does not permit sanctions when a party's failure to supplement is "substantially justified." After considering the witnesses' testimony and counsel's explanation at the July 17 hearing, the Court finds that Hinds County was substantially justified in its failure to supplement its September 2017 discovery responses until July 2018. Accordingly, Davis's motion for sanctions [154] is denied to the extent it seeks any sanctions pursuant to Fed. R. Civ. P. 37.

Rule 11(c) provides sanctions for violation of Rule 11(b). Rule 11(b) states, in pertinent part, that "[b]y presenting to the court a . . . written motion, [motion response,] or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the factual contentions have evidentiary support . . . ." Fed.R.Civ.P. 11(b)(3). The record indicates that Hinds County's attorneys undertook a reasonable investigation and that the subject discovery responses and response to Davis's sanction motion were consistent with the information they had at the time. Therefore, Davis's request for sanctions under Rule 11 is also denied.

Finally, although the Court has the authority to sanction a party for misrepresentations and for discovery misconduct, the record reveals no such impropriety by Hinds County. Defendant's inaccurate discovery responses, the mistaken factual assertions in response to Davis's sanctions motion, and the erroneous statements in Finch's affidavit were not submitted in bad faith. The witnesses' testimony and defense counsel's explanations provided credible and plausible explanations for each mistake. The Court suspects that a more thorough and aggressive investigation into Davis's allegations regarding the use of BWCs during her arrest would have resulted in the video footage being located and produced to Davis more quickly. But Hinds County's possible shortcomings in this regard do not rise to the level of sanctionable conduct.

As it is, Davis has suffered no harm as a result of Hinds County's delayed production of the video. Hinds County has supplemented its responses, and Davis now has the video footage at issue. Davis has plenty of time to make use of the video in filing or responding to dispositive motions and in preparing for trial. Accordingly, she has suffered no actual prejudice as a result of the delay. Davis's second motion for sanctions [154] is denied.

### III. Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed do not change the outcome. For the reasons described above, Davis's first motion for sanctions [92] and second motion for sanctions [154] are both denied.

SO ORDERED, this the 27th of September, 2018.

                                              /s F. Keith Ball
                                          UNITED STATES MAGISTRATE JUDGE